UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

RONALD HAYES,

                        Petitioner,

    -against-

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                        Respondent.

-------------------------------------------------------------------X

08-cv-5280 (ARR)

NOT FOR PRINT
OR ELECTRONIC
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

On December 26, 2008, pro se petitioner Ronald Hayes filed the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, asserting that (1) the trial court committed an error pursuant to Batson v. Kentucky, 476 U.S. 79 (1986); (2) the trial court erred during sentencing by considering facts other than petitioner's prior convictions; (3) the court's ruling under People v. Sandoval, 34 N.Y.2d 371 (1974), was improper and deprived him of a fair trial; and (4) he suffered from ineffective assistance of trial counsel. In letters to the court filed on December 26, 2008, July 2, 2009 and September 2, 2009, petitioner requested to hold his petition in abeyance to permit petitioner to pursue a motion to vacate pursuant to C.P.L. § 440.10 and an Article 78 proceeding. Petitioner's C.P.L. § 440.10 was denied on July 15, 2009, and his application for leave to appeal to the New York Court of Appeals was denied on November 19, 2009. Because petitioner's 440 motion has been decided by the State Courts, I view petitioner's motion to stay habeas proceedings related to his C.P.L. § 440.10 motion as a motion to amend

his habeas petitioner to include those now exhausted claims. Petitioner's Article 78 proceeding was dismissed by the Supreme Court, Albany County, which petitioner subsequently appealed.

For the reasons set forth below, the petition for a writ of habeas corpus, petitioner's motion to amend his habeas petition to include the claims asserted in his C.P.L. § 440.10 motion to vacate, and petitioner's motion to stay proceedings during the pendency of his Article 78 proceedings are denied.

## BACKGROUND

A. *Petitioner's Trial, Conviction, Plea, and Sentencing*

On November 26, 2000, petitioner, acting in concert with another individual who was armed with a gun, robbed a Waldbaums Supermarket, taking a sum of United States Currency. For these acts, petitioner was charged with two counts of Robbery in the First Degree, and two counts of Robbery in the Second Degree under Queens County Indictment Number 480/01.

In the early morning of December 18, 2000, petitioner, armed with a gun, and co-defendant Michael Sanders entered a Pathmark Supermarket in Springfield Gardens, Queens, accosted the manager, and stole over $4,000. (Test. of Alfarquan Richards, Tr. at 288.) Petitioner and his co-defendant were apprehended by the police inside the store, and the officers recovered a gun as well as $4,040 in cash from petitioner. (Test. of Kenneth Norris, Tr. at 369; 377.)

Petitioner and his co-defendant were charged under Queens County Indictment Number 3982/00, with two counts of Robbery in the First Degree, Robbery in the Second Degree, Criminal Possession of a Weapon in the Second Degree; two counts of Criminal Possession of a Weapon in a Third Degree, and Criminal Possession of Stolen Property in the Third Degree.

Petitioner proceeded to trial for the December 18, 2000 incident (Indictment No. 3982/00) in Supreme Court, Queens County. Prior to opening statements, the State dismissed count three of the indictment, Robbery in the Second Degree. (Tr. at 265.) At the conclusion of the trial, petitioner was found guilty on all remaining counts.

On June 18, 2002, petitioner was adjudicated a persistent violent felony offender based on his 1985 conviction for Attempted Criminal Possession of a Weapon in the Second Degree, and his 1991 conviction for Attempted Robbery in the First Degree. (June 18, 2002 Sentencing Tr. at 15.) Petitioner was sentenced to concurrent indeterminate prison terms from twenty years to life for each count of first degree robbery, one count of second-degree possession of a weapon, and one count of third-degree possession of a weapon. Petitioner was also sentenced to concurrent three and a half to seven year terms for the other count of possession of a weapon in the third degree and for possession of stolen property. (June 18, 2002 Sentencing Tr. at 21-22.)

On March 4, 2003, petitioner pled guilty to Robbery in the First Degree for the November 26, 2000 Waldbaums robbery, Indictment Number 480/01. (Mar. 4, 2003 Plea Hr'g. Tr. at 10.) On March 19, 2003, petitioner was sentenced, as a persistent violent felony offender, to an indeterminate prison term of from twenty years to life to run concurrently with the sentence imposed for sentence imposed under Queens County Indictment Number 3982/00. (Mar. 19, 2003 Sentencing Tr. at 7.)

B. *Petitioner's Direct Appeal*

On December 28, 2005, petitioner, through counsel, filed a brief with the Appellate Division, Second Department, arguing that: (a) the trial court erred when, having found a prima facie showing of discrimination in the prosecutor's exercise of peremptory challenges against

black women, it required the prosecutor to offer a race-neutral reason for only one of the three challenges; and (b) petitioner's adjudication and sentence pursuant to New York's persistent violent felony offender statute was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), and violated his right to a jury trial because the enhanced sentence was based upon factual findings made by the court, rather than the jury. (Br. for Defendant-Appellant, Dec. 28, 2005.)

In March 2007, petitioner, with the court's permission, filed a pro se supplemental brief raising four additional claims: (1) that the arresting officer unlawfully seized him when the officer drew his gun and ordered petitioner to stop, and that the officer lacked reasonable suspicion to seize petitioner; (2) that the court's Sandoval ruling deprived him of his right to a fair trial; (3) that he was deprived of due process because the State presented allegedly perjured testimony to the Grand Jury; and (4) the he was denied his right to effective assistance of counsel. Petitioner's ineffective assistance of counsel claim alleged that counsel: (a) failed to use the minutes of the parole hearing to cross-examine Officer Norris at the suppression hearing; (b) failed to cross examine Officer Norris at the suppression hearing about his allegedly false testimony before the Grand Jury; (c) failed to utilize police reports to cross examine the complaining witness; (d) referred to the petitioner in summation as the robber; and (e) failed to secure the sentencing minutes from petitioner's prior conviction in order to challenge the adjudication of petitioner as a persistent violent felony offender. (Supplemental Pro Se Br., Mar. 16, 2007.)

On October 2, 2007, the Appellate Division, Second Department affirmed petitioner's conviction. People v. Hayes, 44 A.D.3d 683 (2d Dept. 2007). The court held that the trial court's Sandoval ruling was proper. With regard to petitioner's claim of ineffective assistance of

counsel, the court held that as for matters on the record, petitioner was afforded meaningful representation, but that to the extent that petitioner's claims were based on matters dehors the record, the court could not review them on direct appeal. Id. The court held that petitioner's claim that the indictment should have been dismissed because allegedly perjured testimony was presented to the Grand Jury was not reviewable on appeal because the conviction was based on legally sufficient evidence. Id. Finally, the court held that petitioner's remaining claims were unpreserved for review. Id.

Petitioner thereafter filed an application for leave to appeal to the New York State Court of Appeals. On January 11, 2008, the Court of Appeals denied petitioner's leave application. People v. Hayes, 9 N.Y.3d 1034 (2008) (Read, J.).


C. *Petitioner's December 26, 2008 Habeas Petition*

On December 26, 2008, petitioner filed a pro se writ of habeas corpus in this court, claiming that: (1) the trial court erred when, having found a prima facie showing of discrimination in the prosecutor's exercise of peremptory challenges against black women, it required the prosecutor to offer a race-neutral reason for only one of the three challenges; (2) the court erred in sentencing by considering facts other than petitioner's prior convictions to enhance petitioner's sentence; (3) the court's Sandoval ruling was improper and deprived petitioner of a fair trial; and (4) trial counsel was ineffective because he: (a) failed to object to the alleged Batson error; (b) failed to use the minutes of the parole hearing to cross-examine Officer Norris at the suppression hearing; (c) failed to cross examine Officer Norris at the suppression hearing about his allegedly false testimony before the Grand Jury; (d) failed to utilize police reports to cross examine the complaining witness; (e) referred to the petitioner in summation as the robber;

and (f) failed to secure the sentencing minutes from petitioner's prior conviction in order to challenge the adjudication of petitioner as a persistent violent felony offender. (Pet. at 5-9.)

In letters to the court filed on December 26, 2008, July 2, 2009 and September 2, 2009, petitioner requested to hold his petition in abeyance to permit petitioner to pursue a motion to vacate pursuant to C.P.L. § 440.10 and an Article 78 proceeding.

D. *Petitioner's Motion to Vacate and Article 78 Proceedings*

On March 26, 2009, petitioner filed a motion to vacate pursuant to C.P.L. § 440.10, alleging that: (1) the State withheld exculpatory evidence from petitioner, specifically, a number of videotapes containing images from the security cameras at the Pathmark Supermarket on the date of the incident, and (2) that petitioner had newly discovered evidence demonstrating that members of family were improperly excluded from the courtroom during a portion of the trial. (Pet.'s Motion to Vacate; Dtk. No. 14 at 7-10.)  Petitioner's motion was denied on July 15, 2009, and petitioner's application for leave to appeal to the Court of Appeals was denied on November 19, 2009.

Petitioner also filed a motion pursuant to Article 78 of New York's Civil Practice Law & Rules, dated March 19, 2009. (Pet.'s Article 78 Mot., Dkt. No. 14 at 16-29.)  In his motion, petitioner argues that the New York State Department of Correctional Services denied him his right to have his present sentence run concurrently with prior undischarged terms. (Pet.'s Article 78 Mot., Dkt. No. 14 at 24.)  On July 20, 2009, petitioner's Article 78 proceeding was dismissed by the Supreme Court, Albany County.  Petitioner has appealed the decision to the Appellate Division, Third Department.

**DISCUSSION**

A.  Petitioner's Batson Claim

Petitioner claims that the trial court erred when, having found a prima facie showing of discrimination in the prosecutor's exercise of peremptory challenges against black women, it required the prosecutor to offer a race-neutral reason for only one of the three challenges.[1] Respondent argues that the claim is procedurally barred as the last reasoned state court opinion found the claim unpreserved for appellate review.

Following the use of peremptory strikes during the second round of jury selection, the prosecutor stated for the record that defense counsel "seems to be striking almost every female white that is left on the panel." (Tr. at 181.)  Defense counsel stated that "I would join about the African Americans being knocked off by the district attorney." (Tr. at 181.)  Neither party made a Batson or reverse Batson challenge at that time. (Tr. at 181.)

During the third round of jury selection, the court asked the parties if there were any challenges to the first three potential jurors.  The prosecutor exercised peremptory challenges against jurors numbers one and two, both black females. (Tr. at 248-50.)  Petitioner then exercised peremptory challenges to jurors numbers four (Asian female) and five (Hispanic female). (Tr. at 249.)  After petitioner peremptorily challenged jurors number six (white female)

---

[1] The "three-step burden-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based" under Batson v. Kentucky, 476 U.S. 79 (1986), is as follows:

> First, the moving party-i.e., the party challenging the other party's attempted peremptory strike-must make a prima facie case that the nonmoving party's peremptory is based on race. Second, the nonmoving party must assert a race-neutral reason for the peremptory challenge. The nonmoving party's burden at step two is very low. . . . [A]lthough a race-neutral reason must be given, it need not be persuasive or even plausible.  Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race.

Harris v. Kuhlmann, 346 F.3d 330, 343 (2d Cir. 2003) (quoting McKinney v. Artuz, 326 F.3d 87, 97-98 (2d Cir. 2003) (internal citations, quotation marks and footnote omitted)).

and seven (white male), the prosecution made a reverse Batson motion, stating that the "defendant has challenged every White person that pretty much is left . . . and I think it rises to the level of a pattern at this point." (Tr. at 250.)  Petitioner's counsel responded that "[i]f the DA is going to do that . . . I am going to raise the first two he knocked off are female Blacks." (Tr. at 250.)  Petitioner's counsel then offered race neutral reasons for his challenges, which the court accepted. (Tr. at 250-51.)  Petitioner's counsel then stated that "I would like the District Attorney to explain why the two African American females were taken off," to which the prosecutor stated that defense counsel "is clearly just making this motion because I made my motion."  The court did not find the motion untimely, but stated that petitioner had not made out a prima facie case to cause the prosecution to go forward with a race neutral rationale. (Tr. at 252.)

After prospective juror number nine was excused for cause, the prosecutor exercised a peremptory challenge against potential juror number eight, a black female. (Tr. at 252.) Petitioner then stated that "this is the third female Black in a row that the District Attorney has knocked off the jury," and claimed that "[t]here is a Batson issue on this one, your Honor." (Tr. at 253.)  The prosecutor argued that his use of three peremptory challenges in a row against black women did not constitute a pattern of discrimination since "five or six of the ten [jurors] that already are seated are African American. (Tr. at 253.)  Petitioner's counsel replied that the number of selected jurors is irrelevant to a Batson claim, and that "[i]f he knocks that woman off because she is Black, that's a Batson violation." (Tr. at 253.)  Petitioner's counsel then said "[s]ame thing with number 1 and number 2, that all seem to be proper people.  I think they are being knocked off because of their race and I am going to raise a Batson on that." (Tr. at 253.) The court then said to the prosecution that "I am asking you now to give reasons for the exclusion of these three people."  When the prosecution asked if the trial judge was referring to

all three or just potential juror number eight, the court said, "[t]he one that he has challenged."

(Tr. at 253.)  After the prosecutor stated that he had struck the third black woman because she

had expressed sympathy for her mentally-ill cousin who had been arrested and "put through the

system," the court allowed the challenge to stand. (Tr. at 255.)  The court did not seek a race

neutral rational for the strikes used against the first two black women, and when asked if he had

anything further, defense counsel stated "[n]o, your honor." (Tr. at 254-55.)

Petitioner argued on direct appeal that the trial court erred when it only required the

prosecutor to give a non-discriminatory reason for striking the third black female juror, claiming

that the court improperly cut short the second stage of the <u>Batson</u> inquiry. (Pet.'s Appellate Br.,

at 11.)  Petitioner argued that the case should be remanded for a hearing at which the prosecutor

would be required to give his reasons for the challenges.  After addressing some of petitioner's

other claims, the Appellate Division, Second Department, found that petitioner's "remaining

contentions are unpreserved for appellate review." <u>People v. Hayes</u>, 44 A.D.3d 683 (2d Dept.

2007).  Respondent argues that the Appellate Division's finding that petitioner's <u>Batson</u> claim

was unpreserved for review is an independent and adequate state law ground that bars habeas

review of the claim.

Federal habeas review is not available where a claim has already been decided by a state

court, and the state court's decision "rests on a state law ground that is independent of the federal

question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729

(1991).  Federal courts may not review state court decisions that rest on an adequate and

independent state procedural default unless petitioner can show both cause and prejudice or a

fundamental miscarriage of justice. <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir.

2000) (citing <u>Coleman</u>, 501 U.S. at 749-50; <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)).

To determine whether the state court found petitioner's claim to be procedurally defaulted under state law, a court must look to the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Fama, 235 F.3d at 809 (internal quotation marks and citation omitted); see also Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997) (explaining that, "in order to preclude federal review, the last state court to render judgment must clearly and expressly state that its judgment rested on a state procedural bar") (internal quotation marks and citation omitted); Chappero v. West, 2009 WL 2058534 (S.D.N.Y. 2009). If the last reasoned state court opinion was based upon an independent and adequate state-law ground, the claim will be procedurally barred from federal habeas review. Generally, a claim otherwise procedurally barred may be reviewed by a federal court in the event that a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A state procedural rule is not "adequate" unless it is "firmly established and regularly followed" by the state. Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James v. Kentucky, 466 U.S. 341 (1984)).

In this case, the Appellate Division, the last reasoned state court opinion on petitioner's Batson claim, stated that petitioner's remaining claims were unpreserved for review. People v. Hayes, 44 A.D.3d 683 (2d Dept. 2007). Because petitioner's "remaining claims" included his Batson claim raised on direct appeal, the state court's reliance on this procedural bar is clear. Fama, 235 F.3d at 809-11; Epps v. Commissioner, 13 F.3d 615 (2d Cir.), cert. denied, 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). Additionally, New York state courts have consistently held that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc.

10

Law § 470.05(2), requires that the issue on appeal be "brought to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78 (1995). New York courts have consistently declined review where a "[d]efendant failed to preserve his current claim that the court did not follow the three-step Batson protocols in determining various claims of discriminatory exercise of peremptory challenges." See People v. Swails, 250 A.D.2d 503, 503 (1st Dept. 1998), lv. denied 92 N.Y.2d 906; see also People v. Harris, 151 A.D.2d 961, 961 (4th Dept. 1989) (holding that for a Batson claim to be timely, "an objection must be made before the jury, or the last juror including alternates, is sworn.").[2] Here, petitioner's counsel not only failed to make a timely objection when the court did not seek a race neutral rationale as to the first two black female jurors, he did not make any objection at all.

The Supreme Court has recognized that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376 (2002). I do not find that this case is an "exceptional one" that would warrant finding the state procedural bar to be "inadequate."[3]

---

[2] The court is aware of only one case in which the Appellate Division remitted a case without any contemporaneous objection by defense counsel, ostensibly placing the responsibility on the trial court to complete the inquiry once a prima facie case has been shown. See People v. Starks, 234 A.D.2d 861 (3d Dept. 1996). New York cases however, have otherwise consistently required compliance with New York's contemporaneous objection rule. See Caston v. Costello, 74 F. Supp. 2d 262, 273-75, 275 n. 12.

[3] Petitioner cannot show that he substantially complied with the requirement to preserve his Batson violation, one of the elements required to show that the application of the state procedural rule in the case was "exorbitant." See Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003). When the court made it clear that it was requiring a race-neutral explanation for only the third black female juror stricken, petitioner did not object, nor did he request a race-neutral rational for the first two black women stuck when the court asked if he had anything further. See Proceedings Tr. at 255; see also Garraway v. Phillips, 591 F.3d 72, 76 (2d Cir. 2010) ("We hold that, by failing to advise the prosecutor or the court that explanations were offered as to fewer than all of several challenged strikes, the defendant has forfeited his Batson claim.")

Additionally, nothing in the record provides cause for petitioner's failure to preserve his <u>Batson</u> claim for review.[4]

       Accordingly, petitioner's <u>Batson</u> claim is denied as procedurally barred.


    B.  <u>Petitioner's Apprendi Claim</u>

       At sentencing, the court adjudicated petitioner a persistent felony offender ("PFO") for the Pathmark and Waldbaums indictments on the basis of two prior violent felony convictions. <u>See</u> Sentencing Tr. at 15; <u>see also</u> N.Y. Penal Law § 70.08. At sentencing, petitioner's counsel argued that the plea underlying the second predicate offense was not knowing and voluntary, and claimed that the sentencing court was required to examine the plea minutes prior to sentencing. (Sentencing Tr. at 3, 11.) When petitioner clarified that his objection stemmed from a failure to understand the ramifications of the previous plea, the court stated that petitioner's "statement that he didn't understand the ramifications of the plea does not provide grounds for him for this Court not to sentence him as a persistent, a mandatory persistent, so I am going to proceed with sentencing." (Sentencing Tr. at 15.)

       On direct appeal, petitioner argued that the sentencing court adjudicated petitioner a persistent felony offender on the basis of two prior violent felony convictions and on the court's implied findings that appellant's incarceration for those convictions met the statutory sequence and tolling provisions such that both fell within the ten year statutory limit for considering a prior conviction a predicate offense. (Pet.'s Appellate Br., at 15.) Petitioner argued that the court's sentencing of petitioner as a persistent violent felony offender violated the Sixth Amendment

---

[4] To the extent petitioner relies on an ineffective assistance of counsel claim for "cause," as discussed below, such a claim was not presented to the state courts in any of petitioner's motions, and thus cannot be used to establish cause. <u>See</u> <u>Reyes v. Keane</u>, 118 F.3d 136, 138-39 (2d Cir. 1997) (finding that a habeas petitioner's failure to raise an ineffective assistance claim in state court precluded his reliance on such an ineffective assistance claim as cause for procedural default).

under Apprendi v. New Jersey, 530 U.S. 466 (2000). (Pet.'s Appellate Br., at 15.)  The Appellate

Division affirmed petitioner's conviction, and held that petitioner's "remaining claims" were

unpreserved for review, which included petitioner's Apprendi claim. People v. Hayes, 44 A.D.3d

683 (2d Dept. 2007).  In the instant action, petitioner claims that the sentencing judge made an

error by considering facts other than petitioner's prior convictions to enhance his sentence in

violation of petitioner's right to a jury trial as set forth in Apprendi. (Pet. at 7.)  Respondent

argues that petitioner's challenge is procedurally barred by an adequate and independent state

procedural ground, and is, in any event, without merit. (Resp.'s Br. At 25.)

　　　As stated above, federal habeas review is not available where a claim has already been

decided by a state court, and the state court's decision "rests on a state law ground that is

independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at

729.  Here, petitioner did not raise an Apprendi issue at sentencing, and the Appellate Division

did not indicate or otherwise cite case law suggesting that its finding that petitioner's claim was

unpreserved was interwoven with federal law. See, e.g., Besser v. Walsh, 601 F.3d 163, 179,

reh'g en banc granted (2d Cir. 2010) (finding that petitioners' challenges to N.Y. Penal Law §

70.10 were decided "on the merits" for AEDPA purposes because each state court cited People

v. Rosen, 96 N.Y.2d 329 (2001), in ruling that those claims were procedurally barred).

Petitioner has also not identified any cause for his non-compliance with New York's procedural

rule, nor has he shown that the failure to consider the claim will result in a fundamental

miscarriage of justice. Coleman, 501 U.S. at 750.

　　　Nevertheless, petitioner's claim is without merit.  The Second Circuit recently concluded

that New York's persistent felony offender statute, N.Y. Penal Law § 70.10, violated the

Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004). See Besser, 601 F.3d

at 170.  Under § 70.10, if a sentencing court determines that a defendant has two prior felony convictions, it must conduct a hearing at which it evaluates whether the history and character of the defendant warrants an enhanced sentence.  See id.  However, in the instant case, the trial court did not sentence petitioner under § 70.10.  Instead, it sentenced petitioner as a persistent violent felony offender under § 70.08.  Besser did not call § 70.08 into question.  See Hearns v. Artus, 2010 WL 2653380, at *9 (E.D.N.Y. 2010).  Though § 70.08 was not at issue in Besser, the court specifically noted that § 70.08 authorizes an enhanced sentence based "*solely* upon the court's finding of *qualifying* predicate convictions."  Besser, 601 F.3d at 170 n. 4 (emphasis added); see also Hearns, 2010 WL 2653390 at * 9.  Thus, the sentencing court's determination as to whether petitioner's prior convictions qualified, that is, whether they fell within the ten year statutory limit for considering a prior conviction a predicate offense, was not a violation of Apprendi.

Accordingly, petitioner is not entitled to habeas relief on this ground.

C.  Petitioner's Sandoval Claim

Under People v. Sandoval, 34 N.Y.2d 371 (1974), the New York trial courts must make a pre-trial determination of which prior convictions or bad acts the prosecution can use to cross-examine the defendant if he chooses to take the stand to testify at trial.  Petitioner claims that the trial court's Sandoval ruling to allow the prosecution to cross-examine the petitioner about prior convictions prevented him from taking the stand in his own defense. (Pet. at 9.)

A trial court's Sandoval ruling is not reviewable in a habeas proceeding unless the petitioner actually took the stand and was cross examined about the prior bad acts or convictions. "A habeas petitioner's failure to testify at trial is 'fatal to any claims arising out of a Sandoval type ruling' because absent such testimony, a court has no 'adequate non-speculative basis upon

which to assess the merits of the claim.'" <u>Beverly v. Walker</u>, 899 F.Supp. 900, 909 (N.D.N.Y. 1995), <u>aff'd</u>, 118 F.3d 900 (2d Cir. 1997) (quoting <u>Peterson v. LeFevre</u>, 753 F.Supp. 518 (S.D.N.Y.1991) (citations omitted), <u>aff'd</u>, 940 F.2d 649 (2d Cir.1991)).  "In other words, habeas relief is never warranted if the petitioner decided not to testify, regardless of the fact that the trial court's <u>Sandoval</u> ruling may have motivated petitioner's decision." <u>McKenzie v. Poole</u>, 2004 WL 2671630 (E.D.N.Y. 2004).  Because petitioner elected not to testify at trial, (Tr. at 463), his <u>Sandoval</u> claim cannot provide a basis for habeas relief.  Accordingly, this claim is denied.

   D.  <u>Petitioner's Ineffective Assistance of Counsel Claims</u>

   Petitioner raises a number of ineffective assistance of trial counsel claims, alleging that his attorney:  (1) failed to use the minutes of petitioner's parole hearing to cross examine a testifying officer at petitioner's suppression hearing; (2) failed to object to the trial court's failure to direct the prosecutor to provide race neutral reasons for all three stricken black female prospective jurors; (3) failed to cross examine a testifying officer at the suppression hearing about his allegedly perjured testimony before the Grand Jury; (4) failed to utilize police reports to cross-examine witness Edward Lisa; (5) referred to petitioner in summation as the "robber" and as having a gun; and (6) failed to secure the minutes of petitioner's prior conviction in order to challenge the constitutionality of the plea and thus his adjudication as a persistent violent felony offender.

   1.  *Standard of Review*

   The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d).  The statute provides, in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409.

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland

test for ineffective assistance of counsel if a party has made an insufficient showing on one. See Id. at 697.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

2. *Counsel's Alleged Failure to Utilize Petitioner's Parole Hearing Minutes*

Petitioner argues that counsel was ineffective because he did not use the minutes of petitioner's parole hearing to cross-examine the arresting officer at petitioner's suppression hearing. (Cross of Kenneth Norris, Suppression Hr'g Tr. at 15-36.) Petitioner argues, as he did on direct appeal in his *pro se* supplemental brief, that Officer Norris testified at the parole hearing that he was responding to an alarm with no description, "while at the suppression hearing, he stated he was responding to a description of two male blacks." (Pet. at 10A.)

Respondent argues that petitioner failed to develop the factual basis for this claim in the proper state court forum, as he never provided the minutes of the parole hearing to the Appellate

Division, nor did he include the claim in his 440 motion.[5]  Petitioner has also not provided this

court with the parole hearing minutes.  Even if petitioner had provided this court with the parole

hearing transcript, under 28 U.S.C. § 2254(e) (2), a federal court reviewing a habeas petition may

not rely on evidence that was not presented to the state courts unless the petitioner can show that

(1) he was diligent in seeking to develop his claims in the state courts, or (2) he satisfies the

conditions set forth in § 2254(e)(2). Holland  v. Jackson,  542 U.S. 649, 124 S.Ct. 2736, 159

L.Ed.2d 683 (2004).  Petitioner has failed to make such a showing.  Accordingly, this claim is

dismissed.


   3.   *Counsel's Alleged Batson Error*

       Petitioner alleges that trial counsel was ineffective for failing to object when the court

allowed the prosecutor to give race-neutral reasons for only one of his peremptory challenges.

The facts surrounding petitioner's claim are discussed above in Part A.  Because there is no

evidence that petitioner raised this claim in any proceeding before the state courts, either on

direct appeal or in his 440 or Article 78 proceedings, this claim is unexhausted.

       A state prisoner seeking federal habeas corpus review of his state court conviction must

first exhaust his available state court remedies.  See 28 U.S.C. § 2254(b)(1) and (c); Blisset v.

Lefevre, 924 F.2d 434, 438 (2d Cir. 1991). A petitioner must "fairly present" his federal claim in

the state courts, thus giving the state courts a "fair opportunity" to hear the federal claims that

form the basis of the habeas petition. See Daye v. Attorney Gen. of New York, 696 F.2d 186,

191 (2d Cir. 1982) (en banc); Duncan v. Henry, 513 U.S. 364, 366-67 (1995). A petitioner has

---

[5] Petitioner claims that the parole minutes were part of the record in his Article 440 proceeding, (Pet.'s Reply Br. at
4), however, there is no record that the minutes were presented to the state court during petitioner's direct appeal,
and petitioner did not raise the claim of ineffective assistance of counsel during his 440 proceedings.  Thus, even if
the parole minutes were part of the record on petitioner's 440 motion to vacate, it would not have been properly
presented to the state court.

fairly presented a claim if he has apprised the state courts of "both the factual and the legal premises of the claim he asserts in federal court." Daye, 696 F.2d at 191. State procedural default also bears on the federal exhaustion requirement for habeas petitions. See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). Specifically, when a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the federal habeas court should consider the claim to be procedurally defaulted. Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008) (citing Coleman, 501 U.S. at 735 n. 1). Because petitioner has not exhausted this claim in state court in any of his various proceedings, and the state courts would now find such a claim procedurally barred, petitioner's claim is procedurally defaulted.

4.  *Counsel's Alleged Failure to Cross Examine Officer Norris Based on Grand Jury Testimony*

Petitioner argues that pre-trial counsel was ineffective for failing to cross examine Officer Norris, one of the arresting officers, at the suppression hearing about his allegedly false testimony provided to the Grand Jury. I find this claim to be meritless.

Petitioner notes that Officer Norris' testimony and the testimony of Officer Falk differ with regard to where and when the gun was recovered from petitioner. (Pet. at 10A-10B.) At petitioner's suppression hearing, Officer Norris testified that he recovered $4,040 in currency from petitioner, and that he observed Officer Falk recover a loaded firearm from inside petitioner's pants. (Oct. 14, 2001 Suppression Hr'g Tr. at 11.) At trial, Officer Norris similarly testified that Officer Falk recovered a handgun. (Norris Test., Tr. at 362.) Before the Grand Jury,

however, Officer Norris, when asked what *he* recovered when searching petitioner, stated, "[a] loaded 38 caliber revolver . . . ." (Norris Test., Tr. at 403.)  While trial counsel did cross examine Officer Norris about the inconsistent testimony at trial (Tr. at 401-404), petitioner's counsel at the suppression hearing did not raise the officer's Grand Jury testimony while Officer Norris was testifying.

Assuming that petitioner's counsel at his suppression hearing was deficient for failing to cross examine Officer Norris regarding his Grand Jury testimony, I cannot find that petitioner was prejudiced as a result.  Officer Norris' testimony at the October 14, 2001 hearing was relevant to the legality of the search of petitioner, and the admissibility of certain statements made by witness Edward Lisa and by the petitioner himself.  Officer Norris testified that he and his partner, Officer Green, responded to a radio run of an armed robbery in progress at the Pathmark supermarket. (Oct. 14, 2001 Suppression Hr'g Tr. at 6.)  Officer Norris also testified that the radio run stated that the robbers were two black men, both of whom were armed. (Oct. 14, 2001 Suppression Hr'g Tr. at 6.)  Officer Norris testified that other officers were present at the scene upon his arrival, and that he observed Officer Fernandez chase petitioner's co-defendant. (Oct. 14, 2001 Suppression Hr'g Tr. at 8.)  Officer Norris testified that petitioner ran towards the officer and said that the store was being robbed and that he was a security guard. (Oct. 14, 2001 Suppression Hr'g Tr. at 9.)  Officer Norris testified that he instructed petitioner to get down, that he and petitioner struggled and that other officers assisted him in arresting petitioner. (Oct. 14, 2001 Suppression Hr'g Tr. at 9-10.)  During the struggle, Mr. Lisa, the night manager, stated that petitioner did not work at Pathmark and was one of the people that robbed the store. (Oct. 14, 2001 Suppression Hr'g Tr. at 10-11.)  After the arrest, Officer Norris testified

that he recovered a sum of money from petitioner's pants, and that Officer Falk recovered a loaded firearm. (Oct. 14, 2001 Suppression Hr'g Tr. at 11.)

Even if petitioner's pre-trial counsel had inquired about the inconsistency in Officer Norris' testimony, I do not find that such an inconsistency would have undermined the credibility of Officer Norris so as to result in a finding that the search was unlawful or the statements inadmissible. Elements of Officer Norris's testimony were corroborated by Officer Fernandez's testimony, (Oct. 14, 2001 Suppression Hr'g Tr. at 39), and the record at the time of the suppression hearing showed that Officer Norris conducted a valid arrest given that he entered upon an armed robbery in progress and had corroboration from the night manager that petitioner was one of the robbers. The search was conducted incident to a valid arrest, and which officer actually recovered the gun from petitioner's body is not an inconsistency so great that petitioner was prejudiced by his pre-trial counsel's failure to inquire as to that inconsistency. Furthermore, as discussed above, trial counsel did in fact cross-examine Officer Norris at trial about the inconsistency, (Norris Test., Tr. at 403), and used the inconsistencies between Officer Norris and Officer Falk to argue that the arresting officers lacked credibility. (Def.'s Summation, Tr. at 499.) Because petitioner has failed to make a showing that he was prejudiced by pre-trial counsel's failure to cross examine Officer Norris regarding his Grand Jury testimony, petitioner's ineffective assistance of counsel claim is denied. Strickland, 466 U.S. 697.


5. *Counsel's Alleged Failure to Utilize Police Reports to Cross-Examine Edward Lisa*

Petitioner argues that trial counsel was ineffective for failing to cross examine the complaining witness, Edward Lisa, about his alleged mis-identification of petitioner's co-defendant. I similarly find this claim to lack merit.

At trial, Mr. Lisa testified that he did not see the second perpetrator and could not describe him. (Test. of Edward Lisa, Tr. at 386.) Petitioner points to a police report signed by Sergeant McCarthy to the Chief of Patrol, which states that "both perps ID by store manager." (Pet.'s Supp. Br. on Direct Appeal, Ex. 1.)

Under New York law, so long as the witness's trial testimony and the prior statement "are inconsistent and tend to prove differing facts," the prior statement is admissible for impeachment purposes. People v. Wise, 46 N.Y.2d 321, 326 (1978) (quoting Larkin v. Nassau Elec. R.R., 205 N.Y. 267 (1912)); see also Laboy v. Demskie, 947 F. Supp. 733, 741 (S.D.N.Y. 1996). However, the source of the information contained in the police report is not given, nor did Sergeant McCarthy testify at trial or otherwise indicate that he was actually at the scene of the incident and received the statement from the complaining witness. Thus, the hearsay contained in the report cannot be considered a prior inconsistent statement by Mr. Lisa such that it could be used to impeach the witness. Accordingly, petitioner's claim is denied.

6. *Trial Counsel's Alleged Errors During Summation*

Petitioner argues that counsel was ineffective for referring to petitioner as the robber and having the gun. The record does not establish this claim. Instead, I find that the record demonstrates that trial counsel argued consistently that this was a case of mistaken identification. (Def.'s Summation at 479-517.) Trial counsel attacked the reliability of the tapes, the credibility of the arresting officers, and the logic of the sequence of events. Trial counsel argued vigorously that the prosecutor failed to prove petitioner's guilt beyond a reasonable doubt. Thus, petitioner has failed to show that trial counsel's performance during summation was at all deficient. Accordingly, this claim is denied.

7. *The Plea Minutes from Petitioner's Predicate Offense*

Petitioner argues that counsel was ineffective for failing to secure the plea minutes[6] from petitioner's prior conviction in order to challenge petitioner's adjudication as a persistent violent felony offender.

At sentencing, petitioner's counsel challenged the constitutionality of petitioner's second prior conviction being used under the persistent violent felony offender statute, on the basis that (1) the plea in that conviction was not entered into knowingly; and (2) that he was never advised of the potential enhanced sentencing consequences on future crimes committed. Petitioner's counsel requested a hearing and that the court examine the minutes of the relevant plea prior to proceeding to sentencing. (Sentencing Tr. at 4-5.) The prosecutor stated that prior to sentencing, he was aware of petitioner's intent to dispute the finding of a persistent violent felony offender, but only on the grounds that petitioner was not made aware at the time of his plea of the plea's affect on a future sentence. (Sentencing Tr. at 12.) The prosecutor argued that petitioner could not at sentencing attack his prior plea on such grounds. (Sentencing Tr. at 12.) While petitioner's counsel stressed that petitioner was challenging the prior plea on *both* grounds, after conferring with petitioner, counsel stated that:

> Judge, my client indicated to me that he did not understand the ramifications of the plea. I don't know what that means, but he's indicated to me because I have explained to him that the DA most likely is correct as far as we mentioned the enhanced sentence, said he didn't understand ramifications of the plea, so that is what he is challenging.

(Sentencing Tr. at 15.) The court responded that "[h]is statement that he didn't understand the ramifications of the plea does not provide grounds for him for this Court not to sentence him as a

---

[6] Petitioner argues that counsel was deficient for failure to secure the "sentencing" minutes from his predicate offense; however, given the nature of his claim, I read the claim to include counsel's alleged failure to secure the "plea" minutes.

persistent, a mandatory persistent, so I am going to proceed with sentencing." (Sentencing Tr. at

15.) Trial counsel asked the court to "[p]lease note my objection because I believe that the Court

has to . . . look at the plea minutes to see if the plea minutes meet requirements." (Sentencing Tr.

at 15-16.) The court stated, "I understand based on his response I find it is not necessary to do

that." (Sentencing Tr. at 16.)

Thus, the record shows that petitioner was in fact only challenging his second predicate

offense on the basis that at the time of his plea for that offense, he was not advised of the

"ramifications of the plea."[7] (Sentencing Tr. at 15.) "The possibility of enhanced punishment for

a crime that may be committed in the future is a collateral consequence of the plea, and the court

has no duty to inform the defendant of such a consequence." People v. Rodriguez, 49 A.D.3d

903, 904 (2d Dept., 2008); see also People v. Ford, 86 N.Y.2d 397, 403; People v. McGrath, 43

N.Y.2d 803, 804; People v. Depeyster, 115 A.D.2d 613. Because an examination of the plea or

sentencing minutes of petitioner's second predicate offense would not have altered the court's

finding that petitioner was a persistent violent felony offender, his counsel cannot be found

ineffective for failing to secure those minutes. Furthermore, it is clear from record that both trial

counsel and the prosecutor attempted to secure the plea minutes in question, (Sentencing Tr. at

12), and that petitioner's counsel did object to the court's lack of examination of the minutes.

(Sentencing Tr. at 15.)[8] Accordingly, I cannot find that counsel's performance at sentencing was

deficient, and petitioner's claim is denied.

---

[7] Petitioner argues in his reply brief that at the time he pled to the second predicate offense, he was affirmatively "misinformed" by counsel as to the collateral consequences of his plea, including the consequences on any subsequent sentence. (Pet.'s Reply Br. at 8.) Because this version of the claim was neither presented in petitioner's direct appeal, nor in any prior or subsequent state proceeding, I find it procedurally defaulted.

[8] To the extent petitioner alleges that the sentencing court erred in not holding a hearing or requiring the plea minutes pursuant to C.P.L. §§ 400.15, 400.16, this claim was not presented to the state court on direct appeal or any other state forum. As discussed above, petitioner's argument on direct appeal under Apprendi related to the

E.  Claims Raised in Petitioner's 440 Motion

In his motion pursuant to C.P.L. § 440.10, petitioner argued that: (1) the court improperly closed the courtroom during jury deliberations in violation of his right to a public trial, and (2) the prosecution withheld exculpatory evidence.  In letters to the court filed on December 26, 2008, July 2, 2009 and September 2, 2009, petitioner requested to hold his petition in abeyance to permit petitioner to pursue his motion to vacate.  Petitioner's C.P.L. § 440.10 was denied on the merits on July 15, 2009, and his application for leave to appeal to the New York Court of Appeals was denied on November 19, 2009.  Accordingly, I read petitioner's motion for a stay as a motion to amend his habeas petition.  Because petitioner timely filed letters seeking a stay, I decline to dismiss his motion based on respondent's argument that the motion is untimely and that petitioner's claims do not "relate back" to the initial pleading. See Fed. R. Civ. Proc. 15(c)(2).  However, I deny petitioner's motion to amend based on the "futility of the amendment." See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008).


1.  *Petitioner's Sixth Amendment Claim*

The trial court closed the courtroom during jury deliberations to allow the jury to watch videotapes using the courtroom's equipment. (Tr. at 602.)  The courtroom was closed to all non-jurors, including the judge, petitioner, and all counsel.  Petitioner argues that his family was not made aware of when the courtroom would re-open, and thus had a "rippling [e]ffect on his [family's] attendance." (Pet.'s Mot. to Vacate at 2.)  The state court found that petitioner had no right to a public viewing of jury deliberations, that petitioner had been given the right to a public

---

statutory period under the sentencing statute, not the voluntariness of petitioner's plea to his second predicate offense. (Def.'s Appellate Br.)  Accordingly, such a claim would be procedurally barred, and is thus procedurally defaulted at this stage.

trial, and that "the failure of his step father to recognize a reopening of the court does not violate that constitutional right." (Jul. 15, 2009 Op., at 5.)

The court's alleged failure to alert petitioner's family members as to when exactly the courtroom would reopen did not infringe on petitioner's Sixth Amendment rights. <u>See</u> <u>Peterson v. Williams</u>, 901 F.Supp. 119, 122 (E.D.N.Y. 1995) (finding no Sixth Amendment violation despite the fact that the court inadvertently kept the courtroom closed after undercover officer's testimony, where there was no evidence that anyone wishing to enter the courtroom after the testimony had been excluded). There is no evidence that anyone who sought entry into the courtroom when the proceedings resumed was denied entry. Thus, petitioner has failed to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law relating to his Sixth Amendment right to a public trial. Accordingly, this claim is futile.

### 2. *Petitioner's Claim that the State Withheld Evidence*

Similarly, there is no merit to petitioner's claim that the State withheld exculpatory evidence in the form of surveillance videos. Petitioner argued in his 440 motion that during the discovery process of his civil trial, <u>Hayes v. City of New York</u>, No. 03-cv-3755 (SLT)(LB), he received copies of surveillance tapes from the night of the Pathmark incident that contradict testimony given at trial. Petitioner argued that had the tapes been received at trial, they would have provided potentially exculpatory evidence favorable to the defendant.

The testimony at trial showed that there were approximately 150 to 200 security cameras in the Pathmark supermarket. (Test. of Alfarquan Richards, Tr. at 285.) The tapes could not be viewed on a regular VCR because they were recorded a multiple angles and ran at different

speeds. (Richards Test., Tr. at 299.)  Witnesses at trial testified that not all the cameras on the night of the incident were functioning. (Richards Test., Tr. at 285; Lisa Test., Tr. at 406.) Witnesses at trial also testified that on the night of the robbery, Officer Norris vouchered nine original tapes removed from the supermarket's VCR, which were admitted into evidence. (Fernandez Test., Tr. at 304-05, 341, 345; Norris Test., Tr. at 374; Richards Test., Tr. at 296-98.) Officer Fernandez testified that on July 25, 2001, he went to Pathmark with the Assistant District Attorney to view the nine tapes, at which point the officer copied relevant portions of the nine tapes onto four other tapes which were admitted into evidence. (Fernandez Test., Tr. at 304-06.)

Following the prosecution's case, counsel for petitioner moved to strike the tapes from evidence on the grounds that the "defense was never provided with proper copies of the tape and proper copies of the tape were not provided to the Court or to the jury . . . ." (Tr. at 465.) Defense counsel argued that the tapes he received did not show the multiple angles of the recording.  The prosecution responded that the multiple camera angles recorded on the original tapes could only be viewed on the machine at Pathmark, and that the defense "has gotten all those copies of the tapes.  If he wanted to make arrangements to bring in a Pathmark VCR . . . maybe he could have done that." (Tr. at 476.)

Petitioner argued in his 440 motion that the tapes received during his civil trial show that certain cameras were working, which directly contradicts testimony given at trial, and that the tapes show a sequence of events that differs from testimony provided at trial and at petitioner's suppression hearing. Petitioner also argued that the prosecution misled the court as the editing of the tapes.  During his civil trial, petitioner was given copies of the original nine videotapes, as well as an additional six videotapes consisting of edited copies of the original videotapes. (Oct.

5, 2004 Letter from Seth Eichenholtz to Superintendant of Great Meadow Correctional Facility; May 12, 2004 Tr. at 18.)

The State court rejected petitioner's 440 motion, finding that the evidence received by petitioner was not "new evidence" under N. Y. Crim. Proc. § 440.10(1)(g). (Jul. 15, 2009 Op., at 4.)  The court found that petitioner had access the tapes in question during his criminal trial, and failed to avail himself of the opportunity to view the tapes on the machines at Pathmark where they could be played. (Jul. 15, 2009 Op., at 4.)  The court also found that petitioner had not brought his 440 motion in a timely fashion under § 440.10(1)(g), as he received the additional tapes on October 5, 2004 and brought this motion in March of 2009. (Jul. 15, 2009 Op., at 4.)

To the extent petitioner's claim relies on "newly discovered" evidence, his claim is procedurally barred from review.  As discussed above, federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729.  Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama, 235 F.3d at 809 (citing Coleman, 501 U.S. at 749-50; Harris v. Reed, 489 U.S. 255, 262 (1989)).

Here, New York law is clear that in order to establish that evidence is newly discovered within the meaning of CPL 440.10(1)(g), there are six requirements which must be met: "(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could have not been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and, (6) it must not be merely impeaching or contradicting the former

28

evidence." People v. Priori, 164 N.Y. 459 (1900); see also People v. Salemi, 309 N.Y. 208 (1955); People v. Tankleff, 848 N.Y.S.2d 286 (2d Dept. 2007). Because the court decided petitioner's 440 motion on this state ground, it is procedurally barred from habeas review.

To the extent petitioner raises a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), in order to demonstrate a Brady violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Here, because the record shows that petitioner had access to the various angles on the tapes if he had utilized the proper equipment at Pathmark, I cannot find that the government willfully or inadvertently suppressed evidence. Accordingly, petitioner's claim is futile, and petitioner's motion to amend his petition to include his now exhausted 440 claims is denied.


F. Petitioner's Article 78 Proceeding Claim

In March 2009, petitioner commenced a proceeding under Article 78 to challenge the Department of Correctional Services' ("DOCS") calculation of his sentence. Petitioner argued that in the absence of an express directive and pronouncement by the sentencing court, DOCS lacked the authority to run the 2002 sentence for the Pathmark incident and the 2003 sentence for the Waldbaum's incident consecutively to the time remaining on an undischarged 1991 sentence. Petitioner also argued that Penal Law § 70.25(2-a) does not apply.

As discussed above, petitioner sought a stay in this court at the time of the filing of his original habeas petition to allow him to exhaust the current claim. In Rhines v. Webber, the Supreme Court stated that the "stay and abeyance" option should be "available only in limited

circumstances." 544 U.S. 269, 277 (2005). The Court also held that even if a petitioner had good cause for his failure to exhaust his remedies in state court, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. (citing 28 U.S.C. § 2254(b)(2)).

Here, it is clear from the record that petitioner's claim lacks merit, and that petitioner's request for a stay must be denied. Petitioner states that in 1985, he was sentenced to two to six years on a felony conviction, with an expiration date of August 4, 1990. (Pet.'s Article 78 Mot., Dkt. No. 14 at 35.) He states that on June 11, 1990, he was arrested for robbery, and in 1991, he was sentenced to six to twelve years, with an expiration date of November 11, 2002. (Pet.'s Article 78 Mot., Dkt. No. 14 at 35.) As discussed above, on June 18, 2002, petitioner was sentenced for the Pathmark incident as a persistent violent felony offender. (Jun. 18, 2002 Sentencing Tr. at 15.) At sentencing, the sentencing court indicated that the sentences on the multiple counts are to run concurrently with each other, but the court was silent as to how the sentences were to run in relation to petitioner's prior undischarged 1991 sentence. (Jun. 18, 2002 Sentencing Tr. at 15.) On March 19, 2003, petitioner was sentenced for the Waldbaums incident as a persistent violent felony offender. The sentencing court indicated that the sentence would run concurrently with the 2002 sentence, but did not specify how the sentence related to petitioner's undischarged 1991 sentence. (Mar. 19, 2003 Sentencing Tr. at 4.)

In his Article 78 motion, petitioner argues that in the absence of an express directive and pronouncement by the sentencing court, DOCS lacks the authority to run the 2002 and 2003 sentences consecutively to the remaining time on his undischarged sentence. He claims that the sentencing courts did not specify that he was being sentenced under N.Y. Penal Law § 70.08, and thus N.Y. Penal Law § 70.25(2-a) does not apply.

N.Y. Penal Law § 70.25(2-a) states that:

> When an indeterminate or determinate sentence of imprisonment is imposed
> pursuant to section . . . 70.06 . . . 70.08 . . . , and such person is subject to an
> undischarged indeterminate or determinate sentence of imprisonment imposed prior to
> the date on which the present crime was committed, the court must impose a sentence to
> run consecutively with respect to such undischarged sentence.

In People ex. rel. Gill v. Greene, 12 N.Y.3d 1 (2009), cert. denied sub. nom. Gill v. Rock,

130 S.Ct. 86 (2009), the New York Court of Appeals held that when a court is required by statute

to impose a sentence that is consecutive to another, and the court does not say whether its

sentence is consecutive or concurrent, it is deemed to have imposed the consecutive sentence the

law requires.  The court found that Gill, who had a prior undischarged term, was sentenced under

the second felony offender statute, Penal Law § 70.06, and his sentence was therefore governed

by Penal Law § 70.25(2-a). Id. at 2.  The court stated that "[n]othing in the statute and nothing in

the Constitution requires the sentencing court to say the word 'consecutive,' either orally or in

writing. Nothing in the statute even requires that the sentencing court be made aware that the

prior sentences are undischarged." Id. at 6.  Thus, the Court of Appeals found that the sentencing

court did not commit an error by not specifying whether the sentence ran concurrently or

consecutively with the prior undischarged term, and that DOCS correctly calculated his sentence

as running consecutively. Id. at 7.

Here, petitioner argues that the sentencing court did not specify that he was sentenced

under N.Y. Penal Law § 70.08.  However, the court found petitioner to be a persistent violent

felony offender, the only statutory authority for which comes from Section 70.08. See N.Y.

Penal Law § 70.08 ("Sentence of imprisonment for persistent violent felony offender.").  Thus,

there is no question that Penal Law § 70.25(2-a) applies, and that DOCS calculated the sentence

accordingly.

Additionally, there cannot be a finding that the state court's denial of petitioner's motion would be contrary to, or involve an unreasonable application of, clearly established Federal law. The case at hand differs from <u>Early v. Murray</u>, 451 F.3d 71 (2d Cir. 2006), in that <u>Early</u> involved the imposition of a term of post-release supervision never specifically imposed by the sentencing court. Here, petitioner was not subjected to a new or extended term of imprisonment – such a term had already been imposed by a prior sentencing court.

Accordingly, petitioner's claim is plainly meritless, and his motion for a stay is denied.

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus, petitioner's motion to amend his habeas petition, and petitioner's motion for a stay of the proceedings are denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/s/ ARR
_____
Allyne R. Ross
United States District Judge


Dated:       July 19, 2010
             Brooklyn, New York

Service List:

Petitioner (Pro Se):
**Ronald Hayes**
# 02-A-4085
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14901-0500


Respondent:

**Merri Turk Lasky**
Queens County District Attorney
125-01 Queens Boulevard
Kew Gardens, NY 11415